We'll call the first case of the day and that's Perry County Nursing Center v. United States Department of Health and Human Services and representing the Perry County Nursing Center we'll hear from Ms. Mitchell. May it please the court, good morning. I'm Julie Mitchell here on behalf of petitioner Perry County Nursing Center, my client, seeking review of the departmental appeals decision final decision 2555 which is the final decision of the Secretary of the United States Department of Health and Human Service. I have reserved five minutes for rebuttal. The question presented in this appeal is when the government commences a specific regulatory proceeding against a party, one that may carry with it substantial fines and penalties, and the government then have to abide by the laws that govern that proceeding? The answer is yes, but that's not what the government did in this case. Perry County Nursing Home is a nursing facility, a skilled nursing facility, that duly participates in both the Medicare and Medicaid programs. As such, it is subject to the rules and regulations governing the Medicare program, what I'm going to refer to herein as the conditions of participation for participating in the Medicare program. As set forth in our brief, the Secretary and its agents, the state, in this case the Mississippi State Department of Health, survey nursing homes such as my client's to enable them to make a determination as to whether or not they are in substantial compliance with the conditions of participation. When they survey a facility and find that that facility make a determination that that facility is in compliance with the conditions of participation, the inquiry ends there. They are allowed, the nursing home is allowed to continue to participate, and it is not subjected to remedies, which can be significant fines and penalties and or up to possibility of termination from the Medicare program. When the CMS and or state agency make, survey a facility and make a determination that that facility is not in substantial compliance with the conditions of participation, they send a notice, a determination, notifying the facility that they're not in substantial compliance and may impose significant fines and penalties called remedies against them, including termination, possible termination. When they conduct a survey, do they need a reason or a complaint, or can they just conduct a survey to make sure you're in compliance? In other words, make sure you haven't lost 2,000 pills. Right, right. And the January 2010 was actually based upon a complaint where the facility self-reported an employee theft of 2,445 Lortabs. The statutes and the regulations speak directly to when CMS and or its state agency can go survey a facility. And I think that's one thing CMS has said, is we have broad authority. Now, they've kind of massaged the language of the statute, but broad doesn't mean unfettered. And while they may have broad authority, Your Honor, that's not the question presented before the court. The question presented before the court is when they have a specific regulation under the appellate process, the appeals process, or the procedures that afford petitioners such as my 498, and when the secretary creates a regulation providing for protection to providers such as my client, which provides that the CMS may only reopen a determination within one year. They may not reopen prior determinations after the year. 42 CFR 498.30. That's the issue before the court. What's our standard of review from your complaint about the reopening and the fact that the appellate board approved it? Well, the departmental appeals, what they said was CMS has called this a new complaint. And CMS wants us to give deference and rubber stamp that. But the establishes that it was a reopening. Well, my point is, if they did a reopening instead of a new one and approved it, doesn't that have to be arbitrary or capricious for us to reverse it? Arbitrary and capricious against the otherwise not in accordance with the law without observance to procedures required by law. It does. So HR is a de novo review is what you're arguing is because it was against the law itself for them to do this? It's against the law itself and it should be de novo. They should not be afforded deference because what we have is real time surveyor notes. They did not have discretion to do what they did. This is not an abuse of discretion standard. You're saying they didn't have any discretion to reopen this case. That's correct. Beyond because they reopened it 17 months after the survey and 14 months after the initial or the the determination. Contrary to what? Contrary to 42 CFR 498.3, the Secretary's own regulation which they're bound to follow. Did they, but they interpret their regulations in such a way that permitted them to do this, didn't they not? What they did, kind of a red herring, was say we're free to survey facilities whenever, wherever, however we want. That may be the case. But in this case, what they did was a reopening under the due process. You're assuming it was a reopen. They didn't, they didn't revisit the compliance that was found in the prior survey and they were looking at a December 2009 violation which was not covered in the 2010 survey, correct? Is it different? No, that's incorrect, Your Honor. With all, with all difference, it's incorrect. If you look at, well, if you look at what they designate as the official 2567 that they created after the fact, I mean, it's well established in the record. All the evidence establishes. The surveyor went out there and said, I am reopening the January 6, 2010 survey. CMS told me to come out there and reopen the January 6, 2010 surveyor. The surveyor's real time notes established that. The declarations of the witnesses, the multiple letters, faxes, 2567s, all certification. Yes, Your Honor. They did. They actually cited them for a failure to work for it to local law enforcement below the theft of 2445 Lord tab not accounted for from the July 2009 until December 2009. They revisited and cited them for this very same issue from 2000 form over substance. If, if he referred to it as a reopening, it's really a survey or vice versa. Why should the label matter? The label? Well, and they can label it whatever they want. But one is a statute that governs the ability to survey. The other is a regulation that provides procedural safeguards to providers by preventing the CMS and the secretary from reopening prior surveys, prior determinations beyond one year. The secretary acknowledges she can't reopen. And that's why what she does is weeks after the survey that they called a reopening, they white out essentially the word reopening. It's a plan of her regulations and not on the basis of a congressional statute. Right? The statute is silent. The due process regulations established a one year limitation on that. The statute is clear and specific as to when they can regulations. Did they make an effort to do that here and make a case that they gave a certain a certain gloss on it that justified what they did? Yes, your honor. Look at the agency's own actions after numerous, numerous notices to the provider that they're reopening the January 2010 survey, all the letters, all the findings and the fact of the matter that they actually did. Weeks after the survey is completed, the notices of determinations have been given. The secretary amends that and crosses out the word reopening, although it is in all the record that all the evidence and and crosses it out and says it's a new complaint. But this gets back to the question that Judge Wiener raised and that is a standard of review. And it abusive discretion standard. So your argument is they abuse their discretion by reopening and not that they violated their own regulations as a matter of law. Is that correct? Yes, your honor. They acknowledge that their own regulation prohibits them from reopening the survey beyond a year. That's why after the fact post hoc rationalization to cure that mistake, they cross out the reopening and call it a new complaint. That's what they did. And that's not entitled to deference with this court. And unlike the Department of Appeals Board, we can't just rubber stamp it with a CMS said it's a new complaint. It may be Chevron deference because I mean an agency has the right to interpret its own regulations so long as it's not inconsistent with the statute itself. You said the statute doesn't say anything about this. What we're talking about is where they complied with the regulation and they are arguing now we complied with the regulation and you're arguing that they abuse the discretion in in changing the term so that that they can even say that. They change the term so they could circumvent their own regulation. They change the term after the fact so that they could circumvent the one year limitation on reopening. But what if it wasn't a reopening? I mean did the 2011 survey make any changes in the determinations that were the result of the 20 April 2010 survey? Yes, your honor. It did. The very first tag. They actually cite them with failure to go notify local law enforcement of the law that they cited them with violating and you know for actions taken in January 2010 wasn't even in existence in January 2010. It was under the Elder Justice Act that was signed in the law. So why didn't that make it a survey instead of a reopening? It's a reopening and they took a second bite at the apple. I think that the surveyor got it correctly when she came out to the facility and said CMS wasn't happy with how I handled the January 2010 survey and subsequent finding of substantial compliance. They sent her back out there to reinvestigate it and they did reinvestigate it. Even tag 520, the last three pages, talk about QA meetings regarding the January 2010 survey. But you said, what do the regulations say about the finality of a determination? Well, if you have a determination that turns substantial compliance, there's no remedies, you're done. The regulations say that the secretary. You said that, but I want to know somebody in a little more authority than you. The regulations 42 CFR 483.30 provide that the secretary may not go out and reopen a determination beyond one year. And that's the finality. That's your resting on that grounds. That was a final, final determination. And the determination itself was final? Yes. Weren't the violations in 2011 different than the violations in 2010? Okay, no. I mean, they found different. A failure report is different than a failure to keep track of. A failure to report to the in-house keep track of the 2000 painkilling pills. Well, the purpose, I think, of the regulation is to provide some finality so that they can't go back after the same fact pattern. And go after it years after the fact. But it's a different violation. So, they might have cited different tags, which I think they were still the same, some of the same tags, but they used the exact same fact pattern. That in April 2010, they had already gone out, reviewed that same situation to make a determination that the facility had corrected all of the perceived problems with the 2010 survey. They gave them a final determination. You're in substantial compliance. Now, here we are a year and a half later. They come back and reopen it and say, guess what? We forgot to look at these issues. Or this law didn't exist at that time. So, I'm going to cite you for a violation of a law that didn't exist. And now I'm going to cite you with over half a million dollars in penalties for that same fact pattern. It's a reopening. The Secretary wants to circumvent that regulation. Do you want to say something about the other aspects of your? Yes, Your Honor. I've got 30 seconds. I do believe that we did brief those two aspects, which is the issue number two, that we think, again, the more specific regulations govern over the general. And the second one, I think that we're kind of – it's the tag 520. The premise is that if it's the last man standing, it's the last tag, then we are entitled to a ruling on that because it does result in an immediate jeopardy. It does pertain to the 2010 lower tab issue and the QA and how they handled that, and that's our position on that. Okay, Ms. Mitchell, you've saved five minutes for rebuttal. Sepstein, we'll hear from you, representing the U.S. Department of HHS. Good morning. I'm Leah Epstein, and I represent the Department of Health and Human Services. I wanted to first address an issue raised by Judge Clement a moment ago about the authority for the survey. The authority provided for by statute is quite broad. It provides that the secretary may conduct a survey of a nursing home any time she has reason to question compliance. I mean, is there any finality at all? Yes. Investigation? I mean, you shouldn't leave people dangling like they can go back four or five years. Your Honor, that's correct, and, in fact, we don't do that. Once you have – But why don't you do that? Is there a regulation or something? I mean, why can you do it here for more than a year, but you can't do it – you're saying that you can't do it after two or three years has passed? No, Your Honor, the argument is that's not what happened here. If you look at the Northridge case, which is cited in the government's brief, you'll see that the issue of temporal finality is addressed. You have standard comprehensive surveys, and then you have more targeted surveys. Once you have a standard survey, the exit interview from that standard survey is sort of the last point in time. All right, is there a determination of compliance issued at that point? Is there a determination of compliance issued? Issued at that point, after the investigation. Yeah, there is. All right, there's one issue in this case. Are you talking about the January 2010 complaint investigation survey? Yes. Okay. Yes, Your Honor, the agency hasn't tried to go back and change any determination for that complaint investigation. Well, I know you say – that's what you say you haven't tried to change a determination, but you have gone behind that determination, which was supposed to be a final judgment, as it were, and reopened matters that occurred before that judgment was in it, before that determination was in it. I'm glad you asked that question, Your Honor. When the agency finds that a facility is back in substantial compliance – I'm glad I pleased you. When an agency finds that a facility is back in substantial compliance with the regulation, it's for that moment in time. It doesn't grant them an immunity against future violations of that same regulation, and that's what happened here. This is a facility that had – You're saying that you never went behind a – they're saying that you went behind a determination after a year had passed, and you're saying that's not the case? Is that what I'm understanding? That's not the case, Your Honor. Okay. Why is that not the case? What is the difference between the two of you? Because one is saying black, one is saying white. Well, we're saying, look, there's – the complaint investigation of January 2, 2010 governed similar subject matters, but if you look at the timing of the conduct that was in violation of the regulations currently under review, it all happened long after 2010. It goes back to April 2011. And so there's no overlap. They're just – the agency – there's nothing to stop the agency from going back and examining whether a facility that has had problems with compliance with a specific area over time is complying in that area now. There's reasons – So your point is the second visit only addressed things that had happened since the end of the original survey? It only addressed things that had happened since the prior comprehensive survey, Your Honor, which was earlier in 2011. So this is then a new failure to comply or a cessation of compliance? That's exactly correct, Your Honor. And there's a lot of evidence in the record to support the existence of concern here. This is a facility that not only had had these problems in January 2010, but – and this is in the record too – had then – they put into place corrective actions in their policies and protocols. And then eight months later, in September 2010, it was found – there was another complaint investigation. A resident had died, and it was found that they had failed to follow the policies and protocols that had been put into place. There was an overdosing situation that was missed by eight different nurses. Is that the justification for the August 11 survey? Well, the Secretary's not required to state a justification, but the concern was that there would be a future relapse. They'd addressed the first relapse, the September 2010 relapse, they'd addressed with additional training because they'd already – the problem wasn't with their policies. And in the August 2011 survey, the problem wasn't with the policies. It was with the failure to follow the policies and protocols. So the overdose resulted from the protocol that was supposed to be in effect, but it wasn't? The protocol was – it was in effect. The nurses weren't following it. They were supposed to compare the label of the medication to the medication administration record. So that resulted in the 2011 survey? The general concerns that this is a facility that's had problems in this area and that has relapsed before, that they might relapse again, that it bears closer examination. The statute contemplates that resources will be focused on facilities that have problematic histories, and that's, in fact, what the agency does. You don't – it's – the petitioner would like you to think that if a facility's been found to be back in substantial compliance, they get a new bill of health, and the Secretary shouldn't look back at – shouldn't look, going forward, at whether this is an area in which they continue to have problems. That's not the case. If they've had a history of noncompliance in an area, which this facility has, then that bears closer scrutiny going forward, and that's what happened here. What about the language in the reports and the survey that it was a reopening, and Ms. Mitchell's explanation that the surveyor said, they sent me back because they didn't do it right the first time? We didn't cross-examine that witness, Your Honor. He said that. That wasn't the surveyor. That's – the testimony is from another witness because the – you know, this issue, it really wasn't relevant. The agency doesn't have to state a reason for conducting a survey or give notice. The concern was, if you look at – and if you look at some of the other evidence they cite, the surveyor notes, it says she has to go in there and make sure they're following their protocols. That's really – that was really the concern here. As I understand their argument is that in January 2010 there was a survey conducted that in April of 2010 they were found to be in substantial compliance and that in August of 2011 you come back in and investigate something that took place in January 2009 – I mean in December of 2009. Is that – is that incorrect? That is incorrect, Your Honor. If you look at the basis for the imposition of remedies in this case, which is the noncompliance findings having to do with the professional standards regulation and the pharmaceutical services regulation, none of the conduct cited goes – We obviously go out to look in the record ourselves because, I mean, you know, mouths apart what the facts are. I'm sorry, Your Honor. The December 2009 violation, was that for the tag, the 225 tag that was not resolved? Yeah, it's a non-immediate jeopardy tag. The agency didn't brief it. It wasn't – it could not be the basis for the imposition of remedies. Does it matter that it wasn't resolved? It's an unreviewed deficiency. The board never – the board's only – hearing rights only arise from imposition of penalties, Your Honor. So if it's not – if it's not necessary to justify the imposition of remedies in this case, it's not reviewable. And so the agency didn't review it. So no fine was assessed. Nothing was done.  No fine was assessed on the basis of that. So it wasn't resolved. So there's no review. Absolutely, Your Honor. Well, let me ask you again. Whether in the April 2010, you found them to be in substantial compliance. Is that true? April 2010. That – April 2010 was the revisit survey, Your Honor. Is that true or not? Yes, Your Honor. But that's for that moment in time. As of that moment in time, they were in substantial compliance. Okay. They were in substantial compliance. And is it true that after that substantial compliance was issued, you later conducted an investigation with respect to events that occurred in late 2009? Is that true? I think events that occurred in late 2009 would be relevant to the investigation that was – that was done. So you went behind – after they were found in substantial compliance in April, you later conducted an investigation that occurred during that same period of time of the January 10, 2000 – January 2010 survey after the substantial compliance and determination were issued. Your Honor, it's not the case that events that happened early – prior to that point are irrelevant. I'm just trying to get – is that true or not? Is that – I believe that they did look at some events from that period. But that – those would be relevant, for example, to the QA committee regulation, which, you know, the question of whether you've complied with the QA committee regulation, the question of what issues were – should have been of concern to the committee is relevant. What issues – should the committee have been on notice that there were certain issues, and what did they do? That's relevant. So they should have looked at things that happened over time. You're saying that in order to do this new one, they have to have the history that led up to the changes for compliance – the old compliance. But whether they're continuing to comply, still you need that background. That's exactly right, Your Honor. Whether a Quality Assurance Committee is complying in the present day, there are going to be some relevant events from the past that are going to come into play. It doesn't mean that you're finding noncompliance in the past. Well, if there was substantial compliance, which I assume means the events that occurred in December of 2009, why would there have been a need to go back and investigate that after you had issued the April 10th substantial compliance? In other words, is there any finality at all? There is finality, Your Honor. And the regulation that Petitioner relies on creates that finality. The finality is a temporal limitation on the Secretary's ability to open and revise initial or reconsider determinations. So once you get notice – I'm sorry, Your Honor. I can see you're not happy with that answer. No, no, no, no, no. I'm just – you're just talking government talk. I mean, I can't quite understand it. There's additional finality, Your Honor. We cannot go back and impose remedies based on conduct that occurred prior to the exit conference from the last comprehensive survey. And that's something that has to happen by regulation – by statute at a minimum every 15 months. I'm not faulting you. I'm just saying it's just a lot of bureaucratic regulations seem to be falling all over each other. What if it's a violation that wasn't penalized by the survey? It's a separate violation. Isn't that what happened here? So you could go back and – You still can't go back, Your Honor. You can't go back prior to the – Then how did they get back to Tag 225? You know, that's an unreviewed deficiency, Your Honor. It's not something we briefed. It's not something that was the basis for the imposition of remedies. But that was the December 2009 conduct violation, right? Arguably, Your Honor. I'm not – because there's no – it was never considered by the ALJ or the board. Right. So was it part of the – was the 2009 violation actually part of the 2011 survey? It was – Because it has a separate tag. I think the – as I said, that issue was never briefed. It was never considered. But had it been considered, the board would have had to deal with this issue of did the conduct – Well, that seems to be what we're asking you. How do you get to 2009 if you've already cleared them for a period in 2010? But if it's a separate violation, which it would be because it's a separate tag, even though it wasn't resolved, maybe we don't have the issue before us and we don't have to think about December 2009. You don't have that issue before you in this case, Your Honor, because of the basis for the imposition of remedies here. The basis of the imposition of remedies was two regulations, the professional standards regulation and the pharmaceutical services regulation. And they did not go back. And facilities do have a right of repose, Judge Dolly. Even the best facilities have to be subject to a comprehensive standard survey every 15 months at a minimum. So we can't go back before that date. We can't go back before the exit interview of the comprehensive survey and say, oh, but you didn't do this, you didn't do that. They have a right of repose beyond that point. And they have this other right of repose, which has to do with the reopening regulation. And that occurred in April of 2010. Do we agree on that? We can't. Well, that's not a comprehensive survey, Your Honor. That was not an exit interview that you're speaking of now. Yeah, I'm speaking of the comprehensive surveys. We didn't go back and change any initial determination from that survey, from the complaint investigation survey. There's no such thing as a reopening survey, Your Honor. That regulation limits our ability to reopen initial or revised determinations. That did not happen here. Well, that was the language that opposing counsel was reading from some reports. There were notices from the state. I'm not saying that makes it right, but that's the term of art she's relying on. There were notices from the state survey agency, Your Honor. And I think as soon as those came across the federal agency's desk, they were corrected. I was trying to think of a way, Your Honor, that you could describe what was going to happen during the survey better. And I came up with, well, you're revisiting the same subject matter as prior surveys. Although that creates its own problem, because revisit also has a regulatory meaning that's different from what was happening here. So it's just imprecise use of language. So it's just a separate survey? Yes, Your Honor. Yeah, it's a separate survey. Separate justification. That's right. The purpose of the second survey was, as I understand it, correct me if I'm wrong, to determine whether what had been determined as compliance was no longer being complied with. That's exactly correct, Your Honor. This is a facility that I have. So in order to determine whether it's not being complied with, you need to know what came before so you know what they're complying with. And going back to December 9 or any time other than that, that's background history, is it not, to determine this new visit in 11, whether they are still in compliance or no longer in compliance. It's in compliance with what, and that includes everything that went before. I think it's certainly relevant to some of the regulations that were being considered during the 2011 survey, Your Honor. We'll see if counsel pops it agrees on rebuttal. I'd like to also briefly address some of the other issues in this case. The unreviewed deficiencies, Your Honor, there's no basis for setting aside the Secretary's findings with respect to the QA Committee regulation. As I explained earlier, facilities can only, they only have appeal rights with respect to noncompliance that leads to the imposition of enforcement remedies. And those enforcement remedies are specified in regulations. Right. How many, how much, what was the fine here? Four hundred and some odd thousand dollars? Or how much was it? It was about, I believe it was a little over $460,000, but it's the per day CMP that you focus on. So how much money are we talking about here in terms of what they say the fines were improper because a determination had been made with respect to those matters and had been closed and you could not come back in and find them from those matters. Did you find them for anything that occurred before April 10? No, Your Honor, we did not. Nothing? No, Your Honor, if you look at the CMPs that were imposed here, they're both near the bottom of the applicable ranges for both the immediate jeopardy period and the non-immediate jeopardy period. So it's hard to take issue with the Board's conclusion that the two noncompliance findings here, the substantial noncompliance with the professional standards, the pharmaceutical tax regulations were more than sufficient to justify the imposition of these very low remedies. In fact, one finding of noncompliance probably would have been sufficient, Your Honor. Okay, what are we really finding? Where did most of these fines come from? What violations? From what violations did most of these fines come? The fines, Your Honor, only came from two violations, the violations of the professional standards regulation and the violation of the pharmaceutical services regulation. That is all. But when? When did the violations occur for which they were fined? Oh, the duration of the noncompliance, Your Honor, was from April... Sorry, Your Honor, I'm looking for the precise date here. It was... Well, just give me the year. Oh, April 2011. But I can be more precise than that. That's precise enough for me. Okay, April 30, 2011 would be the start of the noncompliance. So it didn't go back to 9 or 10? No, Your Honor. No CMP accrued prior to April 2011. Have any of the fines been paid? I don't believe it has. The regulation requiring escrow, I think, was not in place when this case started, so I don't believe so. Counsel for Perry is shaking her head, so we'll see. Okay. Get the counsel chair. I'd also like to point out, Your Honor, that as the DAB noted in its decision, in this case PCNC did not contend that the ALJ committed prejudicial error by failing to address the QA committee regulation and did not challenge the ALJ's conclusion that its noncompliance with professional standards and pharmaceutical services regulations was sufficient to justify the remedies imposed. That's the situation that was addressed by a panel of this court in an unpublished decision in the senior rehabilitation case where they determined that the agency's decision not to address the unreviewed deficiency in those circumstances was neither arbitrary nor capricious. The Sixth Circuit addressed the same issue and also found that it was neither arbitrary nor capricious to . . . Okay. I think you have a red light. Oh, I'm sorry. I'm sorry, Your Honor. That's okay. No problem. Thank you very much. Thank you very much. We'll hear in rebuttal from Ms. Mitchell. This skilled nursing home must be pretty lucrative business, right? The fines are. Your Honors, just one clarification. I understand my client has paid the fines $467,000 concluding the Departmental Appeals Board decision. Now . . . between January 2009 and April 2010. Yes, Your Honor. They all did. It's our position. And just a clarification. She said there was no fine. I think she said no fine. What you're alleging went behind the compliance finality. She says that the no fines resulted from that time period, at least as I understand it. They all resulted from that time period, Your Honor. Let me see if I can clarify. I think I'm reading from different records. Right. You're going to have to look at the records. Is this the same procedure? We can tell the court to look at the record. The DAB did not look at the record. They said CMS said it was a new complaint, and therefore we'll accept that and we'll just call it that. Nobody has ever addressed the record. The evidence in the record establishes it's a reopening. But let me address this. What does the fine say? Doesn't it say you're being fined hundreds of thousands of dollars for these violations? Surely there's some due process explanation. All of the record stated that the requirement is not evidenced by CIMS 7587. Tag 520, the tag she's talking about, that's the offending language. That is the January 2010 survey. All of them said the record, the requirement, is not met as evidenced by Complaint Investigation 7587, the January 2010 survey. All of them did. Now that's where CMS, and I think that just to address counsel opposite, said CMS, when they got wind of this, changed it. That's not what happened, and that's where I tell you. CMS was copied on all of this correspondence. CMS's surveyor wrote her real-time notes and said CMS has directed me to come out here and reopen the January 2010 survey, which resulted in a finding, a determination, in April 13, 2010, where they sent them a determination saying you're in substantial compliance. That's our point. Weeks after the survey and the multitude of correspondence telling the facility that this is a reopening, and let's look at the language in the evidence, CIMS 7587, reopen. On August 3rd through the 7th, 2011, a partially extended survey was conducted to the Complaint Investigation conducted on January 5th through the 6th, 2010. Based upon, not a new complaint, all of the record says it's based upon administrative review by CMS. On June 9th, 2011, Complaint Investigation CIMS 7587, the January LORTAB issue, was conducted on January 5th through the 6th, 2010, with a revisit date of April 4th, 2010, was reopened. Well, you just read about June 11th. Isn't that the time that they were examining whether the prior compliance was continued or abandoned? That is 17 months after the January survey, 14 months after the finding of substantial compliance, CMS, on its own initiative, based upon administrative review, pulled this, and I think if you look at some of the declarations of the witness statements, they say CMS, on its own initiative, pulled this for review, sent the same surveyor that did the January 2010 survey out to the facility, made them go to storage, and pulled the file from the January 2010 survey. And if you look at the August 9th reopening letter that they sent, August 9th, 2011 letter, the initial letter notifying them, they actually identified the LORTAB issue is an immediate jeopardy. Immediate jeopardy carries with it significant fines and penalties, $3,500 to $10,000 per day. Don't negate the fact that the penalties could be imposed for just one day, so it's irrelevant where they choose, what days they choose to put the penalty on. That's irrelevant. The regulation says they cannot reopen beyond one year. They admit that through their own actions. And so what they did was, after the fact, cross out the word reopen and call it a new complaint. Okay, Ms. Mitchell.